UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                          :

UNITED STATES OF AMERICA                    :

                                                                        :        S11 18 Cr. 834 (PAE)
                       -v-                                :
                                                                         :        OPINION & ORDER

ALJERMIAH MACK, a/k/a "Nuke," and        :
ANTHONY ELLISON, a/k/a "Harv,"           :
                                                                          :
                                                    Defendants.    :
                                                                                   X
------------------------------------------------------------------

PAUL A. ENGELMAYER, District Judge:

       This decision resolves post-trial motions filed by defendants Aljermiah Mack and Anthony Ellison.

       Beginning September 16, 2019, the Court presided over the defendants' jury trial, involving charges arising from their alleged participation, with others, in the Nine Trey Gangsta Bloods criminal enterprise ("Nine Trey"). On September 25, 2019, at the close of the Government's case, the Court denied motions from the defendants for judgments of acquittal, pursuant to Federal Rule of Criminal Procedure 29(a). On October 3, 2019, the jury returned its verdict. It convicted both defendants on Count One, charging participation in a racketeering conspiracy, in violation of 18 U.S.C. § 1962(d). It also convicted Mack of Count Six, charging him with narcotics conspiracy, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A), specially finding with respect to that Count that Mack had conspired to distribute and possess with intent to distribute one kilogram and more of mixtures and substances containing a detectable amount of heroin. It also convicted Ellison of Count Two, charging him with kidnapping in aid of racketeering in connection with the July 22, 2018 kidnapping of Daniel Hernandez, in violation of 18 U.S.C. §§ 1959(a)(1) and 2, and Count Five, charging him with maiming and assault with a

dangerous weapon in aid of racketeering in connection with the October 24, 2018 slashing of Mark Hobdy, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), (ii), and 2. The jury acquitted Mack of Count Seven, which charged him with using firearms in furtherance of Count Six, and Ellison of Count Three, which charged him with assault with a dangerous weapon in aid of racketeering in connection with the July 22, 2018 incident.[1]

On December 2, 2019, Mack timely moved for a judgment of acquittal under Rule 29(c). This motion was limited to the jury's special finding with respect to Count Six as to drug weight. Dkt. 378 ("Mack Mem."). The same day, Ellison timely moved, as to all three counts on which he was convicted, for a judgment of acquittal under Rule 29(c), or, in the alternative, for a new trial under Federal Rule of Criminal Procedure 33. Dkt. 376. On December 3, 2019, Ellison filed a brief in support of his motion. Dkt. 380 ("Ellison Mem."). On December 23, 2019, the Government opposed the motions. Dkt. 401 ("Gov. Mem.").

For the reasons that follow, the Court denies both defendants' motions.

I. **Governing Legal Standards**

    A. **Rule 29 Motions**

To grant a motion for acquittal under Rule 29, a Court must find that the evidence was legally insufficient to establish the defendant's guilt beyond a reasonable doubt. *See* Fed. R. Crim. P. 29. "A defendant challenging the sufficiency of the evidence that was the basis of his conviction at trial bears a heavy burden." *U.S. v. Hawkins*, 547 F.3d 66, 70 (2d Cir. 2008) (citation omitted); *U.S. v. Desena*, 287 F.3d 170, 177 (2d Cir. 2002). "The question is not whether this Court believes that the evidence at trial established guilt beyond a reasonable doubt,

---

[1] Because the jury acquitted Ellison on Count Three, it did not reach Count Four, which charged him with a firearms offense in furtherance of Count Three.

2

but rather, whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *U.S. v. Mi Sun Cho*, 713 F.3d 716, 720 (2d Cir. 2013) (per curiam) (emphasis in original) (internal citations omitted). In a close case, where "either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, the court must let the jury decide the matter." *U.S. v. Autuori*, 212 F.3d 105, 114 (2d Cir. 2000) (citation omitted). It is not the trial court's role to "substitute its own determination of . . . the weight of the evidence and the reasonable inferences to be drawn for that of the jury." *U.S. v. Guadagna*, 183 F.3d 122, 129 (2d Cir. 1999) (quoting *Curley v. United States*, 160 F.2d 229, 232 (D.C. Cir. 1947)). Accordingly, a "court may enter a judgment of acquittal only if the evidence that the defendant committed the crime alleged is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." *U.S. v. Espaillet*, 380 F.3d 713, 718 (2d Cir. 2004) (citation omitted).

In considering the sufficiency of the evidence supporting a guilty verdict, the Court must view the evidence in the light most favorable to the Government, with all reasonable inferences drawn in its favor. *See Hawkins*, 547 F.3d at 70; *Mi Sun Cho*, 713 F.3d at 720; *U.S. v. Howard*, 214 F.3d 361, 363 (2d Cir. 2000) ("[We] resolve all inferences from the evidence and issues of credibility in favor of the verdict."). "[T]he task of choosing among competing, permissible inferences is for the [jury], not for the reviewing court." *U.S. v. McDermott*, 245 F.3d 133, 137 (2d Cir. 2001). Moreover, the Court must analyze the pieces of evidence "not in isolation but in conjunction," *U.S. v. Matthews*, 20 F.3d 538, 548 (2d Cir. 1994), and must apply the sufficiency test "to the totality of the government's case and not to each element, as each fact may gain color from others," *Guadagna*, 183 F.3d at 130. *See also U.S. v. Reyes*, 302 F.3d 48, 53 (2d Cir. 2002) ("[W]e consider the evidence as a whole.").

The credibility of a testifying witness is particularly within the province of the jury, not a reviewing court. *See U.S. v. O'Connor*, 650 F.3d 839, 855 (2d Cir. 2011) ("It is the province of the jury and not of the court to determine whether a witness who may have been inaccurate, contradictory and even untruthful in some respects was nonetheless entirely credible in the essentials of his testimony." (internal quotation marks omitted)). For these reasons, the Second Circuit has emphasized that "the proper place for a challenge to a witness's credibility is 'in cross-examination and in subsequent argument to the jury, not in an appellate brief.'" *U.S. v. Roman*, 870 F.2d 65, 71 (2d Cir. 1989) (quoting *U.S. v. Friedman*, 854 F.2d 535, 558 (2d Cir. 1988)). It is for the jury to decide how those arguments bear on "the weight [it] should accord to the evidence." *U.S. v. Truman*, 688 F.3d 129, 140 (2d Cir. 2012).

The jury is, further, permitted to give substantial weight to a single witness's testimony. "A conviction may be sustained on the basis of the testimony of a single accomplice, so long as that testimony is not incredible on its face and is capable of establishing guilt beyond a reasonable doubt." *U.S. v. Diaz*, 176 F.3d 52, 92 (2d Cir. 1999) (internal quotation marks omitted). "Any lack of corroboration of an accomplice's or co-conspirator's testimony goes merely to the weight of the evidence, not to its sufficiency, and a challenge to '[t]he weight is a matter for argument to the jury, not a ground for reversal on appeal.'" *Id.* (quoting *Roman*, 870 F.2d at 71).

The deference accorded to the jury's verdict "is especially important when reviewing a conviction of conspiracy . . . because a conspiracy by its very nature is a secretive operation, and it is a rare case where all aspects of a conspiracy can be laid bare in court with the precision of a surgeon's scalpel." *U.S. v. Pitre*, 960 F.2d 1112, 1121 (2d Cir. 1992) (internal quotation marks omitted). "A conspiracy need not be shown by proof of an explicit agreement but can be

4

established by showing that the parties have a tacit understanding to carry out the prohibited conduct," *U.S. v. Samaria*, 239 F.3d 228, 234 (2d Cir. 2001), *abrogated on other grounds by U.S. v. Huezo*, 546 F.3d 174, 180 n.2 (2d Cir. 2008), and can be shown based on circumstantial evidence alone, *U.S. v. Gordon*, 987 F.2d 902, 906–07 (2d Cir. 1993). *See also U.S. v. Glenn*, 312 F.3d 58, 64 (2d Cir. 2002) ("[T]he prosecution may prove its case entirely by circumstantial evidence so long as guilt is established beyond a reasonable doubt."); *U.S. v. Miranda-Ortiz*, 926 F.2d 172, 176 (2d Cir. 1991) ("Membership in the conspiracy may be proved entirely by circumstantial evidence."). For example, a defendant's "knowing and willing participation in a conspiracy may be inferred from . . . [his] presence at critical stages of the conspiracy that could not be explained by happenstance, or a lack of surprise when discussing the conspiracy with others." *In re Terrorist Bombings of U.S. Embassies in E. Afr.*, 552 F.3d 93, 113 (2d Cir. 2008) (internal quotation marks and citation omitted).

Finally, in a criminal case, a conviction on one count of an indictment may not be challenged merely because it is inconsistent, or in tension, with an acquittal on another count. *See U.S. v. Powell*, 469 U.S. 57, 67 (1984); *Dunn v. United States*, 284 U.S. 390, 393 (1932). As the Second Circuit has explained, "[a] court knows only what the jury's verdicts were, not what the jury found, and it is not within the province of the court to attempt to determine the reason or reasons for verdicts that are inconsistent." *U.S. v. Acosta*, 17 F.3d 538, 546 (2d Cir. 1994); *see also U.S. v. Chang An-Lo*, 851 F.2d 547, 560 (2d Cir. 1988) (rejecting challenge based on inconsistent verdicts on racketeering and narcotics conspiracy counts). That is particularly so when courts have no way of knowing whether a verdict is the result of a "mistake, compromise, or lenity." *Powell*, 469 U.S. at 65; *see also id.* at 66 ("We also reject, as imprudent and unworkable, a rule that would allow criminal defendants to challenge inconsistent verdicts on the

5

ground that in their case the verdict was not the product of lenity, but of some error that worked against them.").

B. **Rule 33 Motions**

Rule 33 provides that a "court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). The Rule confers broad discretion upon a trial court to "set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice." *See U.S. v. Sanchez*, 969 F.2d 1409, 1413 (2d Cir. 1992). In exercising its discretion, however, the court must be careful not to wholly usurp the role of the jury, and should defer to the jury's assessment of witnesses and resolution of conflicting evidence unless "exceptional circumstances can be demonstrated." *Id.* at 1414. Ultimately, the court must decide "whether letting a guilty verdict stand would be a manifest injustice." *See U.S. v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001). The court should "examine the entire case, take into account all facts and circumstances, and make an objective evaluation." *Id.* After doing so, "[t]here must be a real concern that an innocent person may have been convicted" in order to grant the motion. *Sanchez,* 969 F.2d at 1414. The court's Rule 33 authority should be used "sparingly" and only "in the most extraordinary circumstances." *Ferguson,* 246 F.3d at 134.

II. **Discussion**

The Court assumes familiarity with the evidence adduced at trial. The discussion that follows presents only the evidence necessary to resolve the motion at hand.[2]

---

[2] The Government's summary in its opposition to the instant motions, however, provides a helpful and accurate overview of the evidence adduced in its case-in-chief. Gov. Mem. at 2–6.

### A. Mack's Rule 29 Motion

Mack here does not dispute the sufficiency of the evidence of his guilt on either count on which he was convicted. Instead, challenging the jury's special finding as to drug quantity, he argues that the evidence was insufficient to establish that the narcotics conspiracy of which he was convicted (in Count Six) involved one kilogram and more of mixtures and substances containing a detectable amount of heroin. In support of this claim, Mack makes the related argument that, because the jury acquitted him of the firearms count (Count Seven) associated with Count Six, it necessarily discredited as inherently unworthy of belief the testimony of cooperating witness Kristian Cruz, whose testimony was central to both counts and to the jury's finding as to drug quantity.

Because the quantity of drugs involved in a violation of § 841(b)(1)(A) is an element of the charged offense, the Government bears the burden of proving the charged quantity beyond a reasonable doubt. *See U.S. v. Gonzalez*, 420 F.3d 111, 120, 131 (2d Cir. 2005). The drug quantity attributable to a defendant who knowingly participated in a drug distribution conspiracy includes "(1) transactions in which he participated directly, (2) transactions in which he did not personally participate, but where he knew of the transactions or they were reasonably foreseeable to him, and (3) quantities he agreed to distribute or possess with intent to distribute 'regardless of whether he ultimately committed the substantive act.'" *U.S. v. Pauling*, 924 F.3d 649, 657 (2d Cir. 2019) (quoting *U.S. v. Jackson*, 335 F.3d 1790, 181 (2d Cir. 2003)). To prove drug quantity by such means beyond a reasonable doubt, the Government must introduce evidence either of specific drug quantities, or evidence from which quantity can, through reasonable inference, be logically approximated or extrapolated. *U.S. v. Archer*, 671 F.3d 149, 163 (2d Cir. 2011).

7

Viewed in the light most favorable to the verdict, the evidence at trial that Mack participated in a conspiracy to distribute one kilogram and more of mixtures and substances containing heroin easily cleared these standards.

Cruz testified at length about the prodigious narcotics distribution activities he undertook in connection with Nine Trey, which included distributing dozens of kilograms of heroin to and with members of the gang (plus other drugs such as MDMA). The Government would have a substantial argument that all such distribution activities on Cruz's behalf, in connection with Nine Trey, were foreseeable to Mack.

To resolve Mack's instant motion, however, the Court need focus only on the evidence adduced specific to Mack's interactions with Cruz. In particular, Cruz, a prodigious heroin dealer, testified that he had been recruited by Mack and Jamel Jones (head of the gang's "street lineup") on account of Cruz's substantial and profitable drug business. Tr. at 873–75.[3] Cruz further testified that he personally supplied Mack with, across five occasions, approximately 1,350 grams of mixtures and substances containing heroin. Cruz further testified that the two agreed (although it did not come to pass) that Cruz would supply Mack with an additional 500 grams of mixtures and substances containing heroin. *Id*. at 904–06, 1054–69; GX 301A–301C. Cruz further testified that while Mack was incarcerated for a parole violation, Mack tried to arrange for several narcotics transactions including deals involving 200 grams and 300 grams of heroin. Tr. at 917–26.

This testimony alone gave the jury a solid basis on which to find that Mack had participated in a conspiracy to distribute one kilogram and more of heroin. Significantly, too, this conclusion was supported by physical evidence. Recorded phone calls between Cruz and

---

[3] "Tr." refers to the trial transcript; "GX" refers to exhibits offered by the Government at trial.

Mack, in which the two used readily decoded terms to refer to heroin sales, including by price and quantity, corroborated Cruz's testimony. Tr. at 917–26; GX 303–307. For example, in a July 2016 call, Mack told Cruz to meet with someone and that the person was "sounding about like 300," which Cruz credibly testified meant that Mack was asking for 300 grams of heroin. Tr. at 925; GX 303. In other calls, Mack's statements revealed his understanding that his heroin transactions with Cruz were part of a much larger conspiracy. For example, Cruz several times discussed supplying other members of Nine Trey with drugs, including Kifano Jordan, who on one occasion received 150 grams of heroin on consignment from Cruz. Tr. at 941–43; GX 307.

Viewed in totality and alongside Cruz's testimony, Mack's recorded conversations with heroin dealer Cruz supported the inference that Mack appreciated that the Nine Trey heroin conspiracy in which he was a participant was both protracted and high-volume, with aggregate distribution quantities way in excess of one kilogram. Recorded calls between Cruz and at least one other Nine Trey member added support. Cruz, for example, testified that he had given Mack, on consignment, 500 grams of heroin, for which Mack never repaid him. Tr. at 1054–56. Consistent with this, in an October 15, 2016 call between Cruz and Nine Trey member Roland Martin, Cruz expressed discontent that Mack had failed to pay a $26,500 debt to Cruz. Tr. at 1057–59, 1064; GX 301A–301C. Given Cruz's testimony that Cruz often sold heroin for around $47,000 to 55,000 per kilogram, Tr. at 859–60, this recording supported Cruz's testimony to the effect that there had been a 500-gram heroin consignment to Mack. Further physical evidence corroborating Mack's involvement in the Nine Trey drug conspiracy came from Mack's Instagram account, which referenced drug dealing and his membership in Nine Trey. GX 501GG.

In sum, the assembled evidence, testimonial and physical, supplied a solid basis for the jury's special finding as to drug quantity. *See U.S. v. Florez*, 447 F.3d 145, 155 (2d Cir. 2006) ("the uncorroborated testimony of even a single accomplice witness" is sufficient to sustain a conviction, "if that testimony is not incredible on its face").

Mack argues that the Court should nevertheless set aside this finding, on account of the jury's acquittal of him on Count Seven, which charged him with a firearms offense in connection with the Count Six narcotics conspiracy. He argues that, because Cruz's testimony was the basis for each charge, the jury necessarily found Cruz's testimony unworthy of belief, making the two verdicts inconsistent. For two independent reasons, the jury's verdict on Count Seven does not warrant the entry of a judgment of acquittal on Count Six pursuant to Rule 29.

First, Mack's argument does not concern evidentiary insufficiency at all. The acquittal on Count Seven does not eliminate the considerable evidence, including that recapped above, of Mack's participation in a Nine Trey-based heroin conspiracy to distribute one kilogram and more of heroin. At the very most, Mack might argue, as he appears to, that the jury's verdict as to drug quantity on Count Six, even if supported by sufficient evidence, was inconsistent with its verdict on Count Seven. But it is black-letter law that the inconsistency among verdicts does not support vacatur under Rule 29. *See, e.g., U.S. v. Ghailani*, 761 F. Supp. 2d 167, 191–92 (S.D.N.Y. 2011). Indeed, inconsistency among verdicts would not ordinarily alone support setting aside a verdict even under the more permissive standards under Rule 33. *See Acosta*, 17 F.3d at 545 ("[I]t has long been established that inconsistency in jury verdicts . . . is not a ground for reversal of the verdicts of guilty.").

More fundamentally, the jury's verdict as to drug quantity in connection with Count Six is not inconsistent at all with the acquittal of Mack on Count Seven. On the contrary, Mack's

10

acquittal on Count Seven is easily explained other than on the ground, urged by Mack, that the jury necessarily found Cruz categorically incredible.

Simply put, on both Count Six as a whole (which Mack does not challenge) and on the special finding as to drug quantity associated with it, there was physical evidence corroborating Cruz's account. Principally, this consisted of the recorded phone calls. In contrast, there was no such evidence corroborating Cruz's testimony to the effect that Mack had possessed a firearm in connection with the narcotics conspiracy. The Court instructed the jury to view the testimony of cooperating witnesses with caution. Particularly given Cruz's status as such a witness, the jury might well have more readily found guilt beyond reasonable doubt on charges corroborated by unimpeachable physical evidence. On Count Seven, in contrast to Count Six, the trial evidence did not contain such corroboration. Although Cruz testified that he had twice seen Mack in possession of a firearm, *see* Tr. at 1130–31, the recorded phone calls did not bear on that issue, and the trial record did not contain other physical evidence (*e.g.*, photographs) that in theory might have corroborated Cruz's testimony to this effect. The absence of corroborative evidence of this nature could have left the jury unable to find beyond a reasonable doubt that Mack had possessed a firearm. Alternatively, the jury might have so found, but hesitated to find, beyond a reasonable doubt, that Mack's possession of a firearm had been in furtherance of the narcotics conspiracy, as was required for a conviction on Count Seven. There was no physical evidence (*e.g.*, recorded statements) corroborating that proposition, either.

In sum, the jury's different verdicts on Count Six and the drug quantity special finding, on the one hand, and on Count Seven, on the other, may well reflect its nuanced assessment of the different quantums of proof and corroboration on the two counts. In all events, whatever the actual basis was for these outcomes, the different evidence bearing on these distinct and different

11

charges gave the jury a sound basis to reach different outcomes on them. Nothing about the acquittal on Count Seven justifies granting relief to Mack as to any count or finding.

The Court therefore denies Mack's Rule 29 motion.

B. **Ellison's Rule 29 and Rule 33 Motions**

Ellison makes a series of arguments for relief under Rules 29 and 33. These are largely directed at the credibility of Government witnesses, primarily cooperating witness Hernandez. Ellison's arguments are also quickly interred.

Ellison first argues that there was insufficient evidence of the existence of, or of his participation in, the charged racketeering conspiracy among members and associates of Nine Trey. That argument is frivolous.

As to the existence of the Nine Trey racketeering conspiracy, two cooperating witnesses (Cruz and Hernandez)—who were Nine Trey members and who did not know each other— testified in detail about the gang's structure, objectives, membership and activities, including with respect to violence and narcotics dealing, and about their and others' knowing participation in Nine Trey. A third cooperating witness (Jorge Rivera), who through Hernandez associated with the gang in 2018, provided testimony about certain gang activities. This testimony from Nine Trey insiders alone, which the jury was at liberty to credit, supplied a solid basis to find that the gang existed along the lines charged. There was vast corroborative evidence received of the existence and activities of Nine Trey. It included voluminous social media postings and communications, recorded calls, and videos made by gang members. It also included extensive physical evidence chronicling crimes committed by Nine Trey members in the service of the gang. These included the acts of violence to which Hernandez testified (as to which corroborative physical evidence included, *inter alia*, videos from security cameras and texts and

12

social media communications), and the drug dealing to which Cruz testified (which was corroborated by prison phone calls and by the search of a stash house of a Nine Trey associate).

As to Ellison's participation in the Nine Trey racketeering conspiracy, there was also overwhelming evidence. Both Hernandez and Cruz testified to Ellison's prominent role in the gang. *See, e.g.*, Tr. at 255, 268, 866. Corroborating Ellison's participation and membership were numerous photographs, videos, and text messages, which referenced and celebrated Nine Trey, to which members referred as "Billy." *See, e.g.*, GX 800A (message from Ellison's phone stating that "[g]rowing up all I wanted to be a gangsta the right way Neva look up to nothing else"); GX 800B (message from Ellison referencing a different Bloods set, Apes, and stating, "Apes only in NYC Billy we worldwide"); GX 800C (text messages between Ellison and Jones affirming commitment to the gang); GX 800D (messages from Ellison's phone mocking Hernandez for not being a true Nine Trey member); GX 802D (photograph of Ellison making Nine Trey hand sign); GX 802N (video of Ellison making Nine Trey hand sign). And, as noted below, there was extensive evidence of Ellison's commission of the kidnapping of Hernandez, as charged in Count Two, and the slashing of Mark Hobdy, as charged in Count Five, in each case in furtherance of the gang's interests. Contrary to Ellison's claim that there was insufficient evidence that he had "participated directly and indirectly in the conduct of the affairs of Nine Trey through a pattern of racketeering activity," Ellison Mem. at 4, this and other evidence gave the jury an ample basis on which to find that Ellison knowingly participated in the Nine Trey racketeering conspiracy, as charged in Count One.

Ellison counters with factual arguments. He argues that the security services he provided to rapper Hernandez, and the pay he received for such work, were independent of membership in the gang. *Id*. at 3–4. He argues that tensions at points between him and other participants in the

13

gang, including Hernandez and Mack, signify either his lack of participation in Nine Trey or that there was not a unitary Nine Trey conspiracy as charged. *Id*. at 4–5. He argues that the fact that he did not participate in certain acts of violence to which Hernandez testified bespeaks his lack of participation in the racketeering conspiracy as charged. *Id*. at 5–8.

The short answer is that such arguments are properly made (and in some instances were made) to the jury.[4] But given the overwhelming proof of a Nine Trey racketeering conspiracy and of Ellison's involvement in it, these arguments do not support relief under Rule 29. The fact that a particular defendant did not participate in, or have foreknowledge of, particular acts by racketeering co-conspirators does not eliminate liability under § 1962(d). Rather, "[i]t suffices that he adopt[ed] the goal of furthering or facilitating the racketeering enterprise." *U.S. v. Ciccone*, 312 F.3d 535, 542 (2d Cir. 2002). Similarly, the fact that a defendant was at odds with co-conspirators at certain points, or as to certain acts, does not defeat such liability. *See U.S. v. Farmer*, 583 F.3d 131, 143–44 (2d Cir. 2009). The Court accordingly denies Ellison's Rule 29 motion directed at Count One.

Ellison next seeks relief under Rule 29 from his conviction on Count Two, which charged him with kidnapping Hernandez in furtherance of the gang. This argument is also meritless. The evidence of Ellison's commission of this crime was overwhelming. It consisted of the consistent testimony of both Hernandez and Rivera, who were present; and of the revealing videotape of the in-progress kidnapping that Rivera surreptitiously made. *See* GX 604. There were also, among other evidence, medical records and photographs of Hernandez's injuries that were generated immediately after the kidnapping events. GX 206–208.

---

[4] Notably in light of his current suggestion that there may have been multiple Nine Trey-related conspiracies, as opposed to the unitary conspiracy as charged, Ellison did not seek, at the charge conference, a special instruction as to multiple conspiracies. *See* Tr. at 1460–78.

14

In pursuing a judgment of acquittal on Count Two, Ellison argues that Hernandez's testimony as to this event was incredible and as such should be disregarded. However, as noted above, witness testimony is uniquely within the province of the jury. It is not for the Court, on a Rule 29 motion, to substitute its assessment for that of the jury.

In any event, Ellison's argument as to Hernandez's ostensible lack of credibility on the kidnapping count is particularly unpersuasive. Before the jury, Ellison's counsel made the same argument as he does here, urging that Hernandez had staged the kidnapping in order to promote a forthcoming music album. The jury's conviction of Ellison on Count Two necessarily reflects that it rejected this defense and credited Hernandez's account as truthful. And the trial record gave the jury good reason for this verdict. Whereas Hernandez's testimony that he had been kidnapped was compellingly corroborated by Rivera's testimony and the contemporaneous videotape memorializing the kidnapping, Ellison's theory that he had colluded with Hernandez to stage a fake kidnapping was unsupported by any evidence at trial. And Ellison, who was in a position to attest as to his circumstances surrounding that incident—including, if true, that it was a staged, and not actual, kidnapping—elected not to testify.

Other evidence corroborated the Government's account of the kidnapping as retaliation for Hernandez's having disrespected Ellison's authority within Nine Trey—and as a part of a power struggle within the gang—while undermining Ellison's competing theory of a kidnapping staged for commercial purposes. Ellison's recorded statements during the incident, in which he repeatedly demanded that Hernandez admit that he was "not Billy," supported the Government's thesis. And a recorded call soon thereafter, in which Hernandez's then-manager Kifano Jordan discussed his client's kidnapping in terms completely inconsistent with a staged kidnapping for commercial objectives, further undermined Ellison's trial defense.

15

Ellison separately argues that the jury's acquittal of him on Count Three, charging assault with a deadly weapon in aid of racketeering arising from the same event, is inconsistent with its verdict on Count Two, and bespeaks a rejection of Hernandez's testimony. That, too, is wrong. Hernandez testified that the *kidnapping* had been effectuated by a gun, as indeed the videotape (which reflected the display of guns by Ellison and collaborator "Sha") and Rivera's testimony confirmed. But Hernandez notably did not testify that the assault on his person, causing facial contusions, had been effectuated with a gun. *See, e.g.*, Tr. at 498. Although the jury surely could have conceived of the events constituting the assault more broadly and thereby convicted on Count Two, its verdict acquitting Ellison on that Count was coherent, insofar as it appears to have been based on a literal examination of the manner in which Hernandez's face came to be struck (*i.e.*, with a fist, not a deadly weapon such as a gun). In all events, the verdict on Count Three was entirely consistent with that on Count Two. And, as noted in connection with the discussion of Mack's Rule 29 motion, any tension or inconsistency between the verdicts on different counts—and here there was none—would not justify entry of a judgment of acquittal on the count of conviction.

Ellison's final Rule 29 challenge is to his conviction on Count Five, which charged him with the October 24, 2018 maiming and assault with a deadly weapon of Mark Hobdy in aid of racketeering. In fact, the evidence of that event, as chronicled by the Government in summation, *see* Tr. at 1518–26, and more recently in its memorandum of law opposing Ellison's motion, *see* Gov. Mem. at 16–17, was overwhelming. It included testimony from Ellison's then-girlfriend, Jazlyn Ramirez, as to his incriminating movements, whereabouts, statements, and behavior on the night in question; text messages from Ellison's phone; telltale historical cell-site location evidence from the phones of Ellison and Ramirez, reflecting Ellison's convergence with Hobdy

16

at the time and place of the attack; police testimony; and photos of Hobdy's injuries. It also included the testimony of Ramirez and Hernandez, which together established the background and motive for Ellison's savage attack on Hobdy. Drawing on statements of Nine Trey co-conspirators, Hernandez testified that the slashing arose from an intra-gang dispute involving Jordan and Ellison relating to control of Smurf Village, in which a Nine Trey member known as "Gunz" had shot an ally of Ellison. Tr. at 533–46. And Ramirez testified that Ellison that night admitted to her that he "had gotten back at the guy that shot his friend" and had "stabbed the guy in the face." Tr. at 154. This assembled evidence, direct and circumstantial, gave the jury an ample basis on which to convict Ellison on Count Five.

Finally, Ellison seeks a new trial under Rule 33. However, apart from his claims that the evidence against him was legally insufficient and that the witnesses at trial lacked credibility—claims which the Court has firmly rejected—Ellison does not articulate any reason why "justice . . . requires" vacating his conviction in favor of a new trial. Fed. R. Crim P. 33(a).

In fact, justice does not require any such thing. Quite to the contrary, as the Court has reviewed, there was sufficient, indeed compelling, evidence to support Ellison's convictions on Counts One, Two, and Five. And Ellison's trial was fair in all respects. He had the benefit of being represented by able, experienced, and energetic defense counsel. He received fulsome discovery from the Government, had an opportunity to file both legal motions and motions *in limine*, obtained early access to Section 3500 material, and, at trial, availed himself of the opportunity to cross examine the Government's witnesses. He also had the opportunity to call witnesses on his own behalf. Further, after considering all of the evidence presented and the arguments made by both sides, the jury returned a verdict that was consistent with both the legal instructions from the Court and the evidence admitted at trial. And the jury, reflecting due care

and attention, acquitted him of one Count (Count Three) of which he was charged. Particularly considering that Ellison was found guilty of some, but not all, of the charges against him, he cannot credibly claim that the jury exhibited any bias or animus against him. And, indeed, based on the Court's close attention at trial, the jury in this case was highly conscientious and appeared genuinely to be concerned with ensuring that its verdict applied the relevant legal principles to the evidence properly introduced at trial. Accordingly, the Court concludes that affirming the jury's verdict as to Counts One, Two, and Five would not constitute "a manifest injustice," as is required under Rule 33. Ellison's motion for a new trial is denied.

## CONCLUSION

For the foregoing reasons, the Court denies Mack's motion for a judgment of acquittal under Rule 29 as to the jury's special findings on Count Six, and denies Ellison's motions for a judgment of acquittal on Counts One, Two, and Five, and for a new trial under Rule 33 on all counts. The Clerk of Court is directed to terminate the motions pending at docket numbers 376 and 378.

Sentencing for Mack and Ellison will go forward, as scheduled, on February 19, 2020, and February 26, 2020, respectively.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: January 10, 2020
       New York, New York