UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

UNITED STATES OF AMERICA,

-v-

ANTHONY ELLISON,

                Defendant.

18-CR-834-9 (PAE)

OPINION & ORDER

------------------------------------------------------------

PAUL A. ENGELMAYER, District Judge:

On October 3, 2019, following a three-week jury trial, Anthony Ellison was convicted of racketeering conspiracy, kidnapping in aid of racketeering, and maiming and assault with a dangerous weapon in aid of racketeering. *See* Dkt. 321 (jury verdict). Ellison was found guilty based on overwhelming evidence that he had served as a high-ranking leader of the violent Nine Trey Gangsta Bloods ("Nine Trey") gang, and had personally perpetrated savage acts of violence—most notably, the slashing of non-gang-member Mark Hobdy from ear to chin as a means of retaliation against rivals within the gang. Dkt. 407 ("*Post-trial Op.*") at 13; *see id.* 16–17 (describing evidence of slashing). Ellison has been incarcerated since his arrest on November 5, 2018. On January 16, 2019, while awaiting trial, Ellison assaulted another inmate, resulting in the loss of 27 days of good time credit and 180 days of visitation privileges. Dkt. 478 ("Govt. Ltr.") at 4. Ellison is currently detained at the Metropolitan Correctional Center ("MCC") pending his sentencing, which is scheduled for June 19, 2020. The Government calculates that Ellison faces an advisory Sentencing Guidelines range of between 360 months and life imprisonment based on his offense conduct and extensive criminal history. Govt. Ltr. at 4–5.

On April 22, 2020, counsel for Ellison filed a motion seeking Ellison's release on bail from the MCC, pursuant to the Sixth Amendment and 18 U.S.C. § 3142(i), in light of the ongoing COVID-19 pandemic. Dkt. 473 ("Def. Ltr."); *see* Dkts. 472, 476–77 (documents filed in support). Defense counsel states that Ellison is a "vulnerable individual" because he "suffers from an asthmatic condition." Dkt. 473 at 1. The Government opposes this request. Govt. Ltr.

The Court denies Ellison's motion.

First, to the extent that Ellison claims that the conditions at the MCC abridge his Sixth Amendment right to the effective assistance of counsel and require his release, the Court rejects that bid. The Sixth Amendment, which applies to the states through the Fourteenth Amendment, *see Gideon v. Wainwright*, 372 U.S. 335 (1963), provides accused defendants "the right to effective assistance of counsel at all critical stages of a criminal proceeding, including the pretrial stages, trial, and sentencing." *Leslie v. Artuz*, 230 F.3d 25, 32 (2d Cir. 2000) (citing *Strickland v. Washington*, 466 U.S. 668, 686 (1984)). Ellison argues that "[a] detention facility therefore violates the Sixth Amendment when it 'unreasonabl[y] interfere[s] with the accused person's ability to consult counsel.'" Def. Ltr. at 7 (quoting *Benjamin v. Fraser*, 264 F.3d 175, 185 (2d Cir. 2001)). *Benjamin* addresses only the access of "pretrial detainees" to counsel. *Benjamin*, 264 F.3d at 185. Assuming, *arguendo*, that *Benjamin* applies equally to a convicted defendant,[1] to establish a violation of the Sixth Amendment, Ellison must show that conditions at the MCC "unjustifiably obstruct the availability of professional representation or other aspects of

---

[1] *But cf. Walker v. Fischer*, 523 F. App'x 43, 44 n.1 (2d Cir. 2013) (rejecting convicted prisoner's argument, which had relied on *Benjamin*, that a correctional facility violated his due process rights, and noting that *Benjamin* "addressed the process due pre-trial detainees, who have a greater liberty interest in being free from restraint than do convicted prisoners").

the right of access to the courts . . . in light of the central objective of prison administration, safeguarding of institutional security." *Benjamin*, 264 F.3d at 187 (internal quotations omitted).

Ellison cannot meet this standard. Although the unprecedented COVID-19 pandemic has badly disrupted counsels' access to their clients during the past six weeks, that is for justified reasons. It is a result of the Bureau of Prisons' paramount interest in safeguarding inmates such as Ellison, and others, from exposure to this deadly virus. And efforts are underway to increase incarcerated defendants' ability to communicate with counsel. Ellison's general grievance about limited communications with counsel in the weeks since the pandemic struck do not establish a constitutional violation in his or any other case. *See, e.g.*, *United States v. Guzman*, No. 20 Cr. 56 (PAC), 2020 WL 1700253, at *2 (S.D.N.Y. Apr. 8, 2020) ("To accept the defendant's generalizations about impediments to access to counsel and argument that release is necessary . . . would 'logically result in the wholesale release of pretrial inmates. The Court does not accept the proposition that such a result is either better for the inmate or for society more broadly.'" (quoting *United States v. Rudy Acosta*, 19 Cr. 848 (NRB), Dkt. 14 (S.D.N.Y. Mar. 25, 2020))); *United States v. Okongo Landji*, No. S1 18 CR. 601 (PGG), 2020 WL 1674070, at *6 (S.D.N.Y. Apr. 5, 2020) (rejecting claim of violation of defendant's Sixth Amendment rights and declining to find that "BOP's decision to suspend all legal visits for 30 days is unreasonable in light of the global pandemic and the threat it poses to inmates, residents of New York City, and the nation at large").

Ellison's suggestion of a Sixth Amendment violation is particularly far off the mark in his case. Ellison's sentencing was originally scheduled for February 26, 2020. It has twice been adjourned, both at the request of defense counsel—first to April 1, 2020, and then again to June 19, 2020. Ellison's sentencing submission is not due until June 5, 2020, and the Court has

not been given reason to doubt that Ellison's counsel will be able to meet that deadline, or that the Court will be compelled to adjourn the June 19, 2020 sentencing date.[2] Notably, too, on April 8, 2020, the MCC instituted a protocol expanding defendants' access to attorney calls—specifically setting aside the afternoon hours for "non-court" calls, including calls between defendants and their attorneys. *See* Govt. Ltr. at 7–8 (describing measures taking by MCC). This protocol ought to afford Ellison a meaningful opportunity to continue to confer with counsel in preparation for his sentencing. *See United States v. Pena*, No. 18 Cr. 640 (RA), 2020 WL 1674007, at *1 (S.D.N.Y. Apr. 6, 2020) (rejecting claim of Sixth Amendment violation and observing that defendant "retains his right to speak to his counsel by phone, which is a suitable alternative at this time in light of the generally-accepted nationwide mandate against in-person meetings").

Second, to the extent that Ellison pursues release pursuant to 18 U.S.C. § 3142(i), the Court rejects that application, too, for both legal and factual reasons. As the Court has explained, § 3142(i) "permits the temporary *pretrial* release of a defendant otherwise requiring detention into the custody of a U.S. marshal or other designated person," *United States v. McKenzie*, No. 18 Cr. 834 (PAE), 2020 WL 1503669, at *3 (S.D.N.Y. Mar. 30, 2020) (emphasis added), but only "to the extent that [the Court] determines such release to be necessary for the preparation of the person's defense or for another compelling reason," 18 U.S.C. § 3142(i). Ellison has not

---

[2] In any event, while the Court expects to proceed with sentencing Ellison on June 19, 2020, were a further adjournment sought and warranted to enable Ellison to confer further with his counsel, such would not signify a Sixth Amendment violation or justify Ellison's release on conditions pending sentencing. Given the long sentence Ellison faces, an adjournment of the sentencing date would not extend his time in custody, but would merely defer the date of his transfer to a longer-term BOP facility.

cited any authority to the effect that relief under § 3142(i) is available to a defendant who has already been convicted.[3]

In any event, even assuming, *arguendo*, that § 3142(i) gave the Court authority to grant a convicted defendant temporary release, such relief still would clearly be unwarranted in Ellison's case. "In considering whether there is a 'compelling reason' for a defendant's release under [§ 3142(i)], a court must balance the reasons advanced for such release against the risks that were previously identified and resulted in an order of detention. In turn, whether temporary release under § 3142(i) is proper requires the individualized analysis of the facts of each case." *United States v. Chambers*, No. 20 Cr. 135 (JMF), 2020 WL 1530746, at *1 (S.D.N.Y. Mar. 31, 2020). Ellison does not demonstrate that his temporary release is "necessary for the preparation of [his] defense," 18 U.S.C. § 3142(i), as he has already been convicted. And, as noted, his counsel have had, and continue to have, time and opportunity to prepare for sentencing. Moreover, balancing the reasons given for Ellison's release—his asthma[4]—against the risks posed by release, the Court cannot conclude that a "compelling reason" favors release. On the contrary, the Court, based on the trial record and Ellison's criminal history, regards him as "far too great a danger to the community to justify his release." *United States v. Conley*,

---

[3] Consistent with his curious invocation of § 3142(i), Ellison's motion is oddly blind to the fact that the jury convicted him of multiple felonies at trial. He invokes the rights of "the detained suspect, whose innocence is presumed"; cites BOP regulations requiring detention center wardens to "provide the opportunity for *pretrial* inmate-attorney visits on a seven-days-a-week basis," Def. Ltr. at 7 (emphasis added) (citations omitted); and opines that that "[t]here is no greater necessity for the preparation of a 'person's defense' than access to counsel." *Id.* While Ellison surely requires access to counsel in connection with his upcoming sentencing, he can no longer invoke the needs—and statutory bases for release—of a pretrial detainee.

[4] The Government is skeptical of Ellison's claim of a "purported asthma condition," Govt. Ltr. at 3, 5. Because the Court would deny Ellison's bid for release anyway given the danger he poses to the safety of the community, this decision assumes arguendo that his medical condition is as described.

No. 19 Cr. 131 (PAE), Dkt. 366, at 2 (S.D.N.Y. Mar. 31, 2020) ("*Conley Order*"). The vicious conduct for which Ellison was convicted, his significant criminal history, his high-rank in Nine Trey, and his continued violence while incarcerated make clear that "the danger to the community presented by [Ellison's] release outweighs, substantially, the danger to himself presented by his incarceration at" the MCC. *Conley Order* at 2–3. Indeed, in the Court's assessment, of the 20 or more defendants or former defendants who have applied to this Court for release on account of the pandemic, Ellison's release would pose the single greatest danger to public safety. Accordingly, even if it had the legal authority to do so, the Court would not grant Ellison's temporary release under § 3142(i).

For much the same reasons, 18 U.S.C. § 3145(c)—a mechanism that can provide a basis for the temporary release of a convicted defendant awaiting sentencing—does not avail Ellison. Although Ellison did not move under § 3145(c), the Court *sua sponte* considers it here. In general defendants, such as Ellison—who have already been convicted of a crime of violence, such as 18 U.S.C. § 1959(a)(1) or § 1959(a)(2), for which a maximum sentence of 10 or more years imprisonment is prescribed—must be detained pending sentence, unless the Court finds (1) that there is either a substantial likelihood that a motion for acquittal or new trial will be granted or an attorney for the government has recommended that no imprisonment be imposed, *and* (2) that, by clear and convincing evidence, the defendant is not likely to flee or pose a danger to any other person or the community. 18 U.S.C. §§ 3142(f)(1)(A), 3143(a)(2). Section 3145(c) creates a narrow exception to this general rule of detention. It provides, in relevant part, that: "A person subject to detention pursuant to section 3143(a)(2) . . . , and who meets the conditions of release set forth in section 3143(a)(1) . . . , may be ordered released, under appropriate conditions, . . . if it is clearly shown that there are *exceptional reasons* why such person's detention would not be

appropriate." 18 U.S.C. § 3145(c) (emphasis added).  The conditions of release set forth in § 3143(a)(1) require a finding by the court "by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community." 18 U.S.C. § 3143(a)(1).  "[E]xceptional reasons" permitting the release of a defendant subject to mandatory detention are those that "present a unique combination of circumstances giving rise to situations that are out of the ordinary."  *United States v. DiSomma*, 951 F.2d 494, 497 (2d Cir. 1991).[5]

Ellison cannot meet that standard.  He cannot show "by clear and convincing evidence that [he] is not likely to . . . pose a danger to the safety of any other person or the community." 18 U.S.C. § 3143(a)(1).  On the contrary, for the reasons set forth above, Ellison's history makes overwhelmingly clear that, if at liberty even subject to conditions of release, he would pose a grave threat of harm to the community.  *See Post-trial Op.* at 14–18 (reviewing Ellison's violent acts); Govt. Ltr. at 2–3 (reviewing offense conduct, assault on fellow inmate, and criminal history).  Ellison therefore cannot make this necessary threshold showing under § 3145(c).

Accordingly, the Court denies Ellison's motion for release.  Sentencing is scheduled for June 19, 2020.

The Clerk of Court is respectfully directed to close the motions pending at dockets 472 and 473.

---

[5] The Second Circuit has explained that, in determining whether exceptional reasons exist, "a case by case evaluation is essential," and a district court's discretion "is constrained only by the language of the statute: 'exceptional reasons.'"  *DiSomma*, 951 F.2d at 497; *see McKenzie*, 2020 WL 1503669, at *2 (S.D.N.Y. Mar. 30, 2020); *United States v. Hugo Witter*, No. 19 Cr. 568 (SHS), Dkt. 40 at 2 (S.D.N.Y. Mar. 26, 2020).

SO ORDERED.

                                                   *Paul A. Engelmayer*
                                                    PAUL A. ENGELMAYER
                                                    United States District Judge

Dated: April 27, 2020
        New York, New York