UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | 18 Cr. 834-9 (PAE) |
| -v- | OPINION & ORDER |
| ANTHONY ELLISON, | |
| Defendant. | |

PAUL A. ENGELMAYER, District Judge:

The Court has received an application from defendant Anthony Ellison ("Ellison") seeking release from United States Penitentiary ("USP") Canaan pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), in light of the risk that the COVID-19 pandemic presents to his health. *See* Dkt. 596 ("Def. Mot."); Dkt. 598 ("Def. Mem."). The Government opposes his request. *See* Dkt. 599 ("Gov't Mem."). For the reasons that follow, the Court denies Ellison's motion.[1]

On October 3, 2019, after a three-week jury trial, Ellison was convicted of three offenses. *See* Dkt. 582 ("Sent. Tr.") at 6. The first charged him with participating in a racketeering conspiracy, in violation of 18 U.S.C. § 1962(d). *Id.* This count was based on evidence that Ellison was not only a member, but a long-time leader, of a violent gang—Nine Trey Gangsta Bloods ("Nine Trey"), members of which also sold illegal narcotics. *See id.* at 6, 58–59; *see also* Def. Mem. at 1; Gov't Mem. at 1. As the Court summarized at sentencing, the evidence showed that Nine Trey's members participated in shootings, robberies, and severe violence that inspired fear

---

[1] Because the Court lacks authority to grant Ellison's request, *see infra* Section I, and in any event regards the request as meritless on its face, *see infra* Section II, the Court also denies his request for appointment of a second attorney to assist him in pursuing this motion. *See* Dkt. 600.

1

across New York City. Sent. Tr. at 59. The second charged Ellison with kidnapping in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1). *Id.* at 6. This count was based on evidence that, in July 2018, Ellison and an accomplice carried out the armed kidnapping and robbery of the rapper Daniel Hernandez, a/k/a/ "Tekashi 6ix9ine," an associate of Nine Trey who had fallen out of favor with Ellison. *Id.* at 65. The third count charged Ellison with maiming and assault with a dangerous weapon in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(2). This count was based on evidence that, in October 2018, Ellison had viciously slashed open the face of Mark Hobdy, a blameless person who had not done anything to affront Ellison, but had been attacked purely based on his association with a person who Ellison believed had been responsible for the shooting of an ally. *Id.* at 61; *see* Gov't Mem. at 1.

On November 4, 2020, the Court sentenced Ellison to 288 months'—or 24 years'—imprisonment, followed by five years' supervised release. *See* Sent. Tr. at 86. This sentence was below the advisory Guidelines range of 360 months to life. *Id.* at 85. Ellison has served approximately 32 months, or 11 percent, of that sentence. *See* Gov't Mem. at 5. On November 13, 2020, Ellison appealed his judgment of conviction. Dkt. 577. His appeal remains pending before the Second Circuit.

On May 10, 2021, the Court received Ellison's *pro se* motion seeking compassionate release. On May 13, 2021, the Court reappointed Ellison's trial counsel to file a memorandum in support of his motion. Dkt. 597. On May 26, 2021, Ellison's counsel filed that memorandum. *See* Def. Mem. Ellison argues that his vulnerability to COVID-19, the harsh prison conditions that have resulted from the pandemic, and his post-arrest rehabilitation justify his early release or, in the alternative, a reduction in his sentence. *See id.* at 1, 6 (citing Ellison's asthma and race as factors contributing to his heightened vulnerability to COVID-19). On June 2, 2021, the

Government opposed Ellison's motion. Gov't Mem. It argues that the Court lacks jurisdiction to grant that motion given Ellison's pending appeal, and that, in any event, Ellison has neither presented extraordinary and compelling reasons for compassionate release nor shown that the factors set forth in 18 U.S.C. § 3553(a) are compatible with such release. *Id.* at 3–4.

## I. Jurisdiction

In light of Ellison's pending appeal, the Court lacks jurisdiction to grant his motion. "The filing of a notice of appeal is an event of jurisdictional significance," which "confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982). "That rule applies in criminal cases." *United States v. Ransom*, 866 F.2d 574, 575 (2d Cir. 1989) (collecting cases). And, as the Circuit has held, while a district court may correct "clerical errors" after an appeal has been filed, a district court may not make "substantive modifications of judgments." *Id.*

Under these circumstances, the Court lacks authority to "rule on any motion affecting an aspect of the case that [is] before" the Court of Appeals. *Ching v. United States*, 298 F.3d 174, 180 n.5 (2d Cir. 2002); *see also, e.g.*, *Berman v. United States*, 302 U.S. 211, 214 (1937) (post-appeal resentencing prohibited); *United States v. Katsougrakis*, 715 F.2d 769, 777 (2d Cir. 1983). "Once [Ellison] filed his notice of appeal challenging the Court's sentence, jurisdiction over the questions raised in his § 3582(c) motion transferred to the Second Circuit." *United States v. Heyward*, No. 15 Cr. 445 (PAE), 2020 WL 3872148, at *2 (S.D.N.Y. July 9, 2020); *see United States v. Boria*, No. 17 Cr. 142 (RA), 2021 WL 1893324, at *2 (S.D.N.Y. May 11, 2021) ("This rule is regularly applied where, as here, a defendant appeals from his judgment of conviction and subsequently files a motion for compassionate release pursuant to Section 3582(c).").

3

Federal Rule of Criminal Procedure 37(a), however, anticipates precisely the jurisdictional issue present here. It provides:

> If a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may: (1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue.

The advisory committee notes to that rule's 2011 amendment list "motions under 18 U.S.C. § 3582(c)" as one of three types of motions that the drafters "anticipated that Criminal Rule 37 will be used primarily if not exclusively." Reflecting this Circuit's longstanding approach in both civil and criminal cases, *see, e.g.*, *United States v. Camacho*, 302 F.3d 35, 36–37 (2d Cir. 2002); *King v. First Am. Investigations, Inc.*, 287 F.3d 91, 94 (2d Cir. 2002); *Toliver v. County of Sullivan*, 957 F.2d 47, 49 (2d Cir. 1992), this rule allows district courts to deny, but not to grant, a motion for which it lacks jurisdiction due to a pending appeal.

## II. Merits

Because the Court would deny Ellison's § 3582(c) motion had he not filed a notice of appeal, in the interests of judicial economy, the Court reaches the merits, pursuant to Rule 37, and, for the reasons that follow, denies the motion.

Under 18 U.S.C. § 3582(c)(1)(A), a court:

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf . . . may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that— (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

The defendant bears the burden of proving that he is entitled to compassionate release under 18 U.S.C. § 3582(c). *See United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the

defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease."); *United States v. Clarke*, No. 09 Cr. 705 (LAP), 2010 WL 4449443, at *1 (S.D.N.Y. Oct. 29, 2010).

Originally, § 3582(c)(1)(A) did not permit prisoners to initiate compassionate release proceedings, and instead required the Bureau of Prisons ("BOP") to seek such release on their behalf. *United States v. Ebbers*, 432 F. Supp. 3d 421, 422–23, 427 (S.D.N.Y. 2020). However, with the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, Congress amended the law to allow defendants independently to seek compassionate release from federal courts. *See Ebbers*, 432 F. Supp. 3d at 422–23.

The Second Circuit has recently clarified the regulatory guidance applicable to § 3582(c) applications made by defendants. Before the First Step Act, Congress had tasked the Sentencing Commission with identifying circumstances that are sufficiently extraordinary and compelling to justify a reduction in sentence. *Id.* at 427 (citing 28 U.S.C. § 994(t)). The Commission did so in U.S.S.G. § 1B1.13 and its corresponding commentary. That guidance (1) sets out various circumstances that present extraordinary and compelling reasons for release; and (2) requires that a defendant not be a danger to the community. *Id.* § 1B1.13(1)–(3) & cmt. n.1(A)–(D).

By its terms, however, the Commission's guidance applies only to a "motion of the Director of the Bureau of Prisons," *id.* § 1B1.13; the Commission has not updated § 1B1.13 or its commentary to reflect the First Step Act's amendment to § 3582(c)(1)(A) authorizing defendants to move for compassionate release on their own. Accordingly, although courts, including this one, had heretofore widely treated the Commission's guidance as applicable to all compassionate release motions, *see, e.g.*, *United States v. Hernandez*, 451 F. Supp. 3d 301, 303 (S.D.N.Y. 2020); *see also Ebbers*, 432 F. Supp. 3d at 428, the Second Circuit has recently clarified that § 1B1.13

5

"is not 'applicable' to compassionate release motions brought by defendants," rather than by the BOP, and "cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling" in such cases. *United States v. Brooker*, 976 F.3d 228, 236 (2d Cir. 2020); *see also id.* at 237 ("Neither Application Note 1(D), *nor anything else in the now-outdated version of Guideline § 1B1.13*, limits the district court's discretion." (emphasis added)).

Consistent with *Brooker*, in assessing a § 3582(c) motion brought directly by a defendant, the Court is not constrained by either § 1B1.13's enumeration of extraordinary and compelling reasons, or its freestanding requirement that the defendant seeking release not pose any danger to the community. Rather, the Court, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," 18 U.S.C. § 3582(c)(1)(A), may "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it] in motions for compassionate release." *Brooker*, 976 F.3d at 237.

The parties first dispute whether Ellison's circumstances qualify as extraordinary and compelling. In arguing that they do, Ellison points to harsh prison conditions, his asthma and race, and his post-arrest rehabilitation. *See* Def. Mot.; Def. Mem. at 6–7. The Government does not dispute these facts. Instead, it argues that Ellison's refusal to accept the COVID-19 vaccine despite his purported fears of contracting the virus weighs against finding his situation to be extraordinary and compelling. It further notes that the pandemic has substantially waned in severity, with USP Canaan now reporting no active cases among inmates (and only one active case among staff). *See* Gov't Mem. at 4–5.

The Court holds with the Government on this point. To be sure, the COVID-19 pandemic is extraordinary and unprecedented in modern times in this nation. It has presented a clear and present danger to free society for reasons that need no elaboration. The crowded nature of

6

federal prisons in particular presented an outsized risk, during the height of the pandemic, that the COVID-19 contagion, once it gained entry, would spread.[2] In that respect, COVID-19, at least until recently, posed a heightened health risk to all inmates. And, realistically, a high-risk inmate who contracts the virus while in prison will face challenges in caring for himself. Beyond the risks to health, the pandemic has also subjected all inmates to far more restrictive conditions of confinement, and has resulted in limits on access to visitors, including family, far beyond what could have been expected at the time of sentencing. For these reasons, in the past 16 months, various courts, including this one, have ordered the temporary release of inmates held in pretrial or presentencing custody[3] and the compassionate release of high-risk inmates serving federal sentences.[4]

---

[2] *See* Timothy Williams et al., *'Jails Are Petri Dishes': Inmates Freed as the Virus Spreads Behind Bars*, N.Y. Times (May 20, 2020), https://www.nytimes.com/2020/03/30/us/coronavirus-prisons-jails.html; *see also United States v. Nkanga*, 450 F. Supp. 3d 491, 492 (S.D.N.Y. 2020).

[3] *See, e.g.*, *United States v. Chandler*, --- F. Supp. 3d ---, No. 19 Cr. 867 (PAC), 2020 WL 1528120, at *1–3 (S.D.N.Y. Mar. 31, 2020) (granting bail application, under 18 U.S.C. § 3142(i), of defendant charged with being a felon in possession of a firearm); *United States v. McKenzie*, 450 F. Supp. 3d 449, 453 (S.D.N.Y. 2020) (granting bond pending sentencing, under 18 U.S.C. § 3145(c), to defendant who had pleaded guilty to single count of assault with a deadly weapon and had been released on bond); *United States v. Witter*, No. 19 Cr. 568 (SHS), Dkt. 40 at 2–3 (S.D.N.Y. Mar. 26, 2020) (granting bond pending sentencing, under § 3145(c), to defendant who had pleaded guilty to a narcotics offense); *cf. United States v. Stephens*, 447 F. Supp. 3d 63 (S.D.N.Y. 2020) (granting defendant's request for reconsideration of bail conditions and releasing him to home confinement, while noting that, in the alternative, § 3142(i) would require his temporary release).

[4] *See, e.g.*, *United States v. Mcrae*, No. 17 Cr. 643 (PAE), 2021 WL 142277, at *5 (S.D.N.Y. Jan. 15, 2021) (granting compassionate release to defendant with medical conditions putting him at heightened risk of severe COVID-19 and who had served 75% of effective sentence); *United States v. Lizardi*, No. 11 Cr. 1032 (PAE), Dkt. 2532 at 1–2, 9 (S.D.N.Y. Oct. 9, 2020) (same for defendant who had served 93 months of a 121-month sentence and was scheduled to be released to a halfway house in five months); *United States v. Benjamin*, No. 15 Cr. 445 (PAE), Dkt. 1144 at 6–7 (S.D.N.Y. Sept. 15, 2020) (same for defendant with asthma who had served nine years of his 10-year sentence); *United States v. Wilson*, No. 16 Cr. 317 (PAE), Dkt. 656 at 4–7 (S.D.N.Y.

Critically here, however, the Court sentenced Ellison in November 2020, eight months into the pandemic, and at a point when pandemic conditions in the nation were parlous. As a result, the Court overtly took these conditions into consideration at sentencing. Indeed, the Court stated that Ellison's lamentable conditions of confinement in light of COVID-19—both before and after sentencing—were important factors in its decision to impose a substantially below-Guidelines sentence. *See* Sent. Tr. at 81 ("You are entitled, in my judgment, for some reduction to respect the rigors of the past seven months and the heightened limitations that I expect will continue to be a part of prison life until our country defeats the virus."). The Court also took into account Ellison's claims to have matured while incarcerated. *See id.* at 73 (Court was "deeply impressed by the productive use to which [Ellison] ha[d] put [his] time in the MCC," including taking "some 36 courses" and "earn[ing] consistently outstanding work performance ratings"). There is little new information conveyed in Ellison's present application. If anything, given the nation's forward progress in addressing COVID-19 since November 2020, the development and availability to Ellison of effective vaccines, and the minimal incidence of COVID-19 at USP Canaan today, the risk to Ellison's health presented by the pandemic is lower today than the Court had envisioned at sentencing eight months ago.

In any event, even if the circumstances factored into an inmate's sentence could, in general, qualify as extraordinary and compelling, Ellison's specific circumstances do not so qualify. Even crediting that Ellison's asthma diagnosis gives him a degree of heightened vulnerability to COVID-19, his physical and medical condition is far closer to the mine-run of

---

Aug. 31, 2020) (same for defendant with heighted vulnerability who had served the substantial majority of his sentence and played a low-level role in a drug trafficking conspiracy); *United States v. Simon*, 482 F. Supp. 3d 151, 154–56 (S.D.N.Y. 2020) (same for elderly defendant, who had serious medical conditions and played a low-level role in a drug trafficking conspiracy).

inmates than to those who, on account of significantly heightened vulnerability to COVID-19, have secured release during the pandemic under § 3582(c). *See, e.g.*, *supra* note 4; *see also, e.g.*, *Simon*, 482 F. Supp. 3d at 154–56 (granting compassionate release to 72-year-old defendant with HIV, chronic obstructive pulmonary disorder, prostate cancer, hepatitis C, and hypertension); *United States v. Davies*, 469 F. Supp. 3d 175, 178–80 (S.D.N.Y. 2020) (similar). And, as noted, the incidence of COVID-19 today is dramatically reduced, as exemplified by the facility where Ellison is housed, which, as of the filing of the Government's opposition, was free of inmates with COVID-19. Finally, although the choice is Ellison's whether to become vaccinated, he undisputedly has the ability to do so and thereby further limit his COVID-19 risk. Ellison therefore has not established extraordinary and compelling reasons for release.

In any event, even assuming *arguendo* that Ellison had done so, showing extraordinary and compelling reasons is only a threshold requirement for the grant of compassionate release. To order such release, the Court would also have to find that Ellison's release at this point is consistent with "the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). Here, those factors—especially the need for the sentence to "reflect the seriousness of the offense, to promote respect for the law, . . . to provide just punishment for the offense[,] . . . [and] to afford adequate deterrence to criminal conduct"—overwhelmingly require rejecting Ellison's application for release. 18 U.S.C. § 3553(a).

Ellison today has served barely 10 percent of the 24-year sentence that the Court—based on essentially an identical factual record eight months ago—determined was minimally necessary with to respect to the § 3553(a) factors. The Court incorporates by reference here its detailed assessment of these factors at sentencing.

9

Principally, the Court found a sentence of such length necessary to assure the interest in just punishment, given the viciousness of Ellison's crimes. Ellison, the Court noted, "chose not only to affiliate with [a violent] gang, but to serve in a lead role in it, including, as the evidence showed before me, in 2018, when . . . the gang's violent activity appeared to peak." Sent. Tr. at 59. He "functioned as something of an enforcer for the gang," which meant he "sometimes carried a firearm to protect its members." *Id.*

And the acts underlying the two substantive counts of which Ellison was convicted were horrific. First, Ellison kidnapped Daniel Hernandez by ramming his vehicle, drawing a gun, and threatening—credibly, according to the testimony of the victims—to shoot him and his driver. *Id.* at 64. Ellison "put two people in fear of their lives" who "had done nothing to deserve that." *Id.* at 65. His motivation was to steal jewelry from Hernandez and to punish Hernandez for disrespecting Ellison and, as perceived by Ellison, Nine Trey as well. Finally, Ellison's attack on Hobdy, in which he sliced open an innocent man's face to send a message to others, was even more cruel and bloodthirsty. Hobdy had not done anything to Ellison or Nine Trey, yet Ellison disfigured him for life. *Id.* at 61. At sentencing, the Court stated:

> That crime alone, even if there had been no separate kidnapping of Daniel Hernandez, would have warranted a long sentence. It was wanton, and cruel, and vicious, and senseless. [Ellison] carved up a fellow human being's face for no reason other than to send a message to his friends not to mess with [Ellison] or [Ellison's] sect within Nine Trey.

*Id.* at 62.

"[F]rom the perspective of just punishment," the Court therefore held, "a very long sentence is necessary." *Id.* And, the Court held, various other § 3553(a) factors—including the need to protect the public and to deter Ellison from further violent crimes—also strongly favored a lengthy sentence, in line with that imposed. *See id.* at 65–71.

10

The Court's assessment just eight months ago that the § 3553(a) factors required that Ellison serve a 24-year sentence—the longest imposed on any of the Nine Trey defendants—remains apt. Indeed, to the extent that the impact, and risk to Ellison, of contracting COVID-19 after sentencing was a factor that lowered the sentence the Court imposed, the nation's impressive progress in cabining that disease since November 2020 has, if anything, exceeded what the Court then anticipated. Releasing Ellison today, barely 10% into his assigned sentence, would disrespect all the factors on which the Court relied. As a matter of just punishment, it would fail to respect the gravity of Ellison's offenses, including the "sheer savagery and sadism reflected in [Ellison's] disfigurement of Mark Hobdy." *Id.* at 84. And it would disserve the interests in protection of the public and general and specific deterrence. *See* Sent. Tr. at 65–71.

Ellison's application, in short, is wholly incompatible with the Court's judgment that no sentence below 24 years in prison would be reasonable for him in light of the assembled § 3553(a) factors. *See id.* at 85–86 (noting that a sentence of 360 months would also have been reasonable, although not the lowest of the reasonable sentences). Indeed, Ellison's motion, if granted, would result in his serving a substantially lower sentence than virtually all of his co-defendants—despite the fact that Ellison's crimes were the most severe.[5] The Court, in fact, has denied compassionate release motions for a number of these co-defendants, whose bids for such release, although unavailing, were to a person no weaker than Ellison's. *See, e.g.*, Dkts. 461 (denying compassionate release to co-defendant Denard Butler, who had served 15 months of a 60-month

---

[5] For example, such release would leave Ellison serving a substantially shorter sentence than the 15-year sentence imposed on his co-defendant Kifano Jordan, whose motion for compassionate release the Court denied in July 2020, despite the Court's recognition at Ellison's sentencing that the § 3553(a) factors required Ellison to serve a longer prison term than Jordan's. *See* Sent. Tr. at 81–83; Dkt. 516.

sentence), 465 (same to co-defendant Roland Martin, who had served 16 months of a 66-month sentence), 469 (same to co-defendant Faheem Walter, who had served 17 months of a 62-month term of imprisonment), 516 (same to co-defendant Kifano Jordan, who had served 19 months of a 180-month term of imprisonment), 520 (same to co-defendant Jesnel Butler, who had served fewer than 20 months of a 60-month term of imprisonment), 530 (same to co-defendant Fuquan Lovick, who had served 28 months of an 85-month term of imprisonment). This outcome—in which Ellison, of all these defendants, would be released earliest—would be perverse, unsustainable, and unjust.

The Court accordingly denies Ellison's motion for compassionate release or, in the alternative, a sentence reduction under 18 U.S.C. § 3582(c). Given the gravity of Ellison's crimes, the fraction of the sentence imposed that he has to date served, and the fact that he has presented no or virtually no information in support of release that was not known to the Court at the time of sentencing, his motion is frivolous.[6]

---

[6] Ellison's *pro se* motion attaches—but does not comment upon—a document dated September 18, 2020, before Ellison's sentencing, and purportedly signed by Hobdy, which purports to recant Hobdy's identification of Ellison as his slasher. *See* Dkt. 596 at 65. The document appears on the letterhead of a private investigative firm headed by Manuel Gomez and bears the purported signature of Gomez. Ellison's counsel did not embrace or draw upon this document in supporting his application for release. It is not clear what purpose Ellison had in attaching this document to his *pro se* motion. To the extent that Ellison intended to call into question the validity of his conviction for Hobdy's maiming by attaching it to a compassionate release motion, the Court emphatically rejects this play. Hobdy did not, of course, testify at trial. Nor was any out-of-court identification by him of Ellison offered or received in evidence. And the trial evidence that Ellison committed the slashing was varied and overwhelming, as the Court recapped in denying Ellison's post-trial motions. *See* Dkt. 407 at 16–18. Moreover, in the course of presiding over a separate matter, the Court has become aware of substantial allegations of, *inter alia*, witness tampering and evidentiary fabrication by and associated with Gomez. See, for example, dockets 781, 793, 800 in *United States v. Randall*, No. 19 Cr. 131 (PAE) (S.D.N.Y. May 10 and 14, 2021), and docket 47 in *United States v. Andrews*, No. 20 Cr. 546 (GRB) (SIL) (E.D.N.Y. May 4, 2021).

The Clerk of Court is respectfully directed to terminate the motions pending at dockets 596 and 600.

SO ORDERED.

_____
PAUL A. ENGELMAYER
United States District Judge

Dated: July 7, 2021
New York, New York