UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | 18 Cr. 834 (PAE) |
| -v- | OPINION AND ORDER |
| ANTHONY ELLISON, | |
| Defendant. | |

PAUL A. ENGELMAYER, District Judge:

This decision resolves a *pro se* motion for compassionate release by defendant Anthony

Ellison, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  In the motion, Ellison's second, he seeks

release from the Metropolitan Detention Center ("MDC"), not based on medical exigencies, but

based on (1) alleged new evidence involving a victim, Mark Hobdy, whom Ellison violently

slashed, (2) the crimes committed by Daniel Hernandez, a cooperating witness at Ellison's trial,

and (3) Ellison's ostensible acceptance of responsibility in foregoing an asserted compelling

venue challenge to two counts of conviction.  Dkt. 670 ("Def. Mot."); Dkt. 674 ("Def. Reply").

The Government opposes Ellison's motion.  Dkt. 673 ("Gov't Opp.")

The Court denies the motion as baseless.[1]

---

[1] The Court also denies Ellison's related motion, Dkt. 677, to be released on bail pending resolution of this motion.

I.      **Background[2]**

A.      **Ellison's Trial, Conviction, and Appeal**

On October 3, 2019, after a three-week jury trial, Ellison was convicted of three offenses. The first charged him with participating in a racketeering conspiracy, in violation of 18 U.S.C. § 1962(d). This count (Count One) was based on evidence that Ellison was not only a member, but a leader—and for an extended period—of a violent gang, Nine Trey Gangsta Bloods ("Nine Trey"), members of which also sold illegal narcotics. *See* Dkt. 582 ("Sent'g Tr.") 58–59; *see also* Gov't Opp. at 1; Def. Mot. at 1. As the Court summarized at sentencing, the evidence showed that Nine Trey's members participated in shootings, robberies, and severe violence that inspired fear across New York City. Sent'g Tr. 59.

The second count charged Ellison with a violent crime, kidnapping, in aid of a racketeering enterprise, in violation of 18 U.S.C. § 1959(a)(1). This count (Count Two) was based on evidence that, in July 2018, Ellison and an accomplice carried out the armed kidnapping and robbery of the rapper Daniel Hernandez, a/k/a/ "Tekashi 6ix9ine," an associate of Nine Trey who had fallen out of favor with Ellison. Sent'g Tr. 64–65.

The third count (Count Five) charged Ellison with a separate violent crime—maiming and assault with a dangerous weapon—in aid of a racketeering enterprise, in violation of 18 U.S.C. § 1959(a)(2). This count was based on evidence that, in October 2018, Ellison had viciously slashed open the face of Mark Hobdy, a blameless person who had not done anything to affront Ellison, but had been attacked purely based on his association with a person whom

---

[2] The abbreviated history of Ellison's case that follows draws heavily, and in parts verbatim, on the earlier decisions denying Ellison's (1) post-trial motions, *see* Dkt. 407 ("1/10/20 Dec'n"); (2) application for release on bail in light of the COVID-19 pandemic, *see* Dkt. 479 (4/27/20 Dec'n"); and (3) initial application for compassionate release, *see* Dkt. 602 ("7/7/21 Dec'n").

Ellison believed had been responsible for the shooting of an ally.  Sent'g Tr. 61–62; Gov't Opp. at 1.

On January 10, 2020, in an 18-page decision, the Court denied the post-trial motions, under Federal Rules of Civil Procedure 29 and 33, of Ellison and his trial co-defendant, Aljermaih Mack.  *See* 1/10/20 Dec'n.

On November 4, 2020, the Court sentenced Ellison to 288 months'—or 24 years'— imprisonment, followed by five years' supervised release.  This sentence was below the advisory Guidelines range of 360 months to life.  *See* Sent'g Tr. 84, 86.  Ellison has served approximately 59 months, or approximately 20 percent, of that sentence.

On November 13, 2020, Ellison appealed his judgment of conviction.  Dkt. 577.  On September 23, 2022, the Second Circuit affirmed the conviction; on October 17, 2022, the Circuit's mandate issued.  Dkt. 657.

### B.   Ellison's First Compassionate Release Motion

On May 10, 2021, while Ellison's appeal was pending, the Court received his first *pro se* motion for compassionate release, seeking release from United States Penitentiary ("USP") Canaan pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), in light of the risk the COVID-19 pandemic presented to his health.  *See* Dkts. 596, 598.  At the Court's direction, appointed counsel for Ellison filed a memorandum in support of that motion.  Dkt. 597.  The Government opposed the motion.  *See* Dkt. 599.

On July 7, 2021, the Court denied Ellison's motion.  Dkt. 602.  The Court found, first, that Ellison had not established circumstances qualifying as extraordinary and compelling. Although Ellison had largely relied on the pandemic as a basis for relief, the Court noted that he had refused to accept the COVID-19 vaccine, and that the pandemic had waned, with USP

Canaan reporting no active cases among inmates. *Id.* at 6. And to the extent that earlier prison conditions during the pandemic had been parlous, the Court had explicitly taken these into account during Ellison's sentencing. *Id.* at 7–8. Moreover, the Court noted, although Ellison's asthma diagnosis gave him a degree of heightened vulnerability to COVID-19, "his physical and medical condition is far closer to the mine-run of inmates than to those who, on account of significantly heightened vulnerability to COVID-19, have secured release" under § 3582(c). *Id.* at 8–9 (citations omitted).

In any event, the Court held, even if Ellison had shown extraordinary and compelling circumstances, his release would be incompatible with the 18 U.S.C. § 3553(a) factors on which the Court had based his sentence. Ellison had served barely 10 percent of the 24-year sentence that the Court had found minimally necessary with respect to these factors. *Id.* at 9. Reviewing its remarks at sentencing, the Court noted that this sentence had principally been necessary to achieve just punishment, "given the viciousness of Ellison's crimes." *Id.* at 10. These included occupying a leadership role in the violent Nine Trey gang; the "cruel and bloodthirsty act" of slashing from ear to jaw the face of the innocent Hobdy to send a message to others; and kidnapping Nine Trey affiliate Hernandez by ramming his vehicle, drawing a gun, and threatening to shoot him and his driver, with the goal of stealing jewelry and punishing Hernandez for disrespecting Ellison. *Id.* And, the Court held, other § 3553(a) factors— including the need to protect the public and deter Ellison from further violent crimes—strongly favored the sentence imposed. *Id.* at 10. In sum, the Court held, Ellison's application for release "is wholly incompatible with the Court's judgment that no sentence below 24 years in prison would be reasonable for him in light of the assembled § 3553(a) factors." *Id.* at 11.

### C. Ellison's Second Compassionate Release Motion

On April 14, 2023, Ellison, *pro se*, filed a new motion for compassionate release, pursuant to § 3582(c)(1)(A).  Dkt. 670.  It sought Ellison's release from the MDC, where he has been transferred pending trial on charges including conspiracy to commit honest services wire fraud, and to provide contraband to other inmates, on which trial is scheduled to commence on November 13, 2023.  *See United States v. Anthony Ellison*, No. 21 Cr. 673 (ALC) (S.D.N.Y.).

Ellison's new motion argued that there were three extraordinary and compelling reasons warranting his release: that (1) information purportedly from Hobdy allegedly established that Ellison had not committed the slashing assault that was the subject of Count Five; (2) Hernandez's "wrongful conduct" had provoked the kidnapping that was the subject of Count Two; and (3) Ellison had shown extraordinary acceptance of responsibility in foregoing "an undeniable defense," based on lack of venue, to the offenses charged in Counts Two and Five. *See* Def. Mot.  On May 1, 2023, the Government filed its opposition.  Gov. Opp.  On May 3, 2023, Ellison filed a *pro se* reply.  Def. Reply.

## II.  Discussion

### A.  Standards Governing Compassionate Release Motions

"[U]pon motion of the defendant," and "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," the Court may reduce such defendant's sentence if it finds that "extraordinary and compelling reasons warrant such a reduction."  18 U.S.C. § 3582(c)(1)(A). The defendant bears the burden of proving he is entitled to compassionate release.  *See United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease.");

*United States v. Clarke*, No. 09 Cr. 705 (LAP), 2010 WL 4449443, at *1 (S.D.N.Y. Oct. 29, 2010).

Originally, § 3582(c)(1)(A) did not permit defendants to initiate compassionate release proceedings; it required the BOP to seek such release on their behalf. *United States v. Phillibert*, 557 F. Supp. 3d 456, 459 (S.D.N.Y. 2021). However, "[a]s part of the First Step Act of 2018, Congress authorized courts to reduce a term of imprisonment upon motion by a defendant." *United States v. Amato*, 48 F.4th 61, 63 (2d Cir. 2022) (per curiam).

Congress tasked the Sentencing Commission with identifying the circumstances that are sufficiently extraordinary and compelling to justify a reduction in sentence. *United States v. Brooker*, 976 F.3d 228, 232 (2d Cir. 2020) (citing 28 U.S.C. § 994(t)). The Commission did so in U.S.S.G. § 1B1.13 and its commentary, which, *inter alia*, (1) define various circumstances that present extraordinary and compelling reasons justifying release; and (2) require that a defendant not be a danger to the safety of the community. U.S.S.G. § 1B1.13(1)–(3) & cmt. n.1. However, the guidance under this provision applies only to a "motion of the Director of the Bureau of Prisons." *Id.* § 1B1.13. It does not apply "to compassionate release motions brought by defendants," rather than by the BOP, and "cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling" in such cases. *Brooker*, 976 F.3d at 236 (internal quotation marks omitted); *see also id.* at 237 ("Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion."). Thus, when assessing a motion brought by an imprisoned defendant and not the BOP, the Court is not constrained by U.S.S.G. § 1B1.13's enumeration of extraordinary and compelling reasons and may "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it] in motions for compassionate release." *Id.* at

237.[3] Even if such reasons are present, the Court must also assure itself that release is consistent with "the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A).

### B.    Analysis

Ellison makes three arguments why extraordinary and compelling circumstances support his release.

Ellison first argues that Mark Hobdy, the victim of the slashing charged in Count Five, has provided a statement exonerating Ellison. Def. Mot. at 3–4. The Court has previously rejected precisely this argument based on the same statement. In denying Ellison's first motion for compassionate release, the Court wrote:

> Ellison's *pro se* motion attaches—but does not comment upon—a document dated September 18, 2020, before Ellison's sentencing, and purportedly signed by Hobdy, which purports to recant Hobdy's identification of Ellison as his slasher. *See* Dkt. 596 at 65. The document appears on the letterhead of a private investigative firm headed by Manuel Gomez and bears the purported signature of Gomez. Ellison's counsel did not embrace or draw upon this document in supporting his application for release. It is not clear what purpose Ellison had in attaching this document to his *pro se* motion. To the extent that Ellison intended to call into question the validity of his conviction for Hobdy's maiming by attaching it to a compassionate release motion, the Court emphatically rejects this play. Hobdy did not, of course, testify at trial. Nor was any out-of-court identification by him of Ellison offered or received in evidence. And the trial evidence that Ellison committed the slashing was varied and overwhelming, as the Court recapped in denying Ellison's post-trial motions. *See* Dkt. 407 at 16–18. Moreover, in the course of presiding over a separate matter, the Court has become aware of substantial allegations of, *inter alia*, witness tampering and evidentiary fabrication by and associated with Gomez. *See*, for example, dockets 781, 793, 800 in *United States v. Randall*, No. 19 Cr. 131 (PAE) (S.D.N.Y. May 10 and 14, 2021), and docket 47 in *United States v. Andrews*, No. 20 Cr. 546 (GRB) (SIL) (E.D.N.Y. May 4, 2021).

---

[3] Although the Sentencing Commission has since amended the Guidelines to cover defendant-initiated petitions as well, those amendments will not go into effect until November 1, 2023, and thus do not govern this petition. *See generally* U.S. Sent'g Comm'n, Amendments to the Sentencing Guidelines, 88 Fed. Reg. 28,254 (effective Nov. 1, 2023), *available at* https://www.federalregister.gov/documents/2023/05/03/2023-09332/sentencing-guidelines-for-united-states-courts.

7/7/21 Dec'n at 12 n.5.

Ellison's latest compassionate release motion does not add any content to this point. And the evidence on Count Five was overwhelming, as the Court stated in denying Ellison's post-trial motions under Rules 29 and 33. *See* 1/10/20 Dec'n at 16. As the Court there recapped, this evidence:

> included testimony from Ellison's then-girlfriend, Jazlyn Ramirez, as to his incriminating movements, whereabouts, statements, and behavior on the night in question; text messages from Ellison's phone; telltale historical cell-site location evidence from the phones of Ellison and Ramirez, reflecting Ellison's convergence with Hobdy at the time and place of the attack; police testimony; and photos of Hobdy's injuries. It also included the testimony of Ramirez and Hernandez, which together established the background and motive for Ellison's savage attack on Hobdy. Drawing on statements of Nine Trey coconspirators, Hernandez testified that the slashing arose from an intra-gang dispute involving Jordan and Ellison relating to control of Smurf Village, in which a Nine Trey member known as "Gunz" had shot an ally of Ellison. Tr. at 533–46. And Ramirez testified that Ellison that night admitted to her that he "had gotten back at the guy that shot his friend" and had "stabbed the guy in the face." Tr. at 154. This assembled evidence, direct and circumstantial, gave the jury an ample basis on which to convict Ellison on Count Five.

*Id.* at 16–17.

In sum, Ellison's offering of an unsworn statement purportedly given to a sketchy private investigator does not come close to undermining the mountain of evidence of his guilt on Count Five, or justifying his release.

Ellison, second, argues that cooperating witness Hernandez's complicity in Nine Trey's crimes is an extraordinary and compelling reason for his release. That argument, which is based on facts fully ventilated at trial, is frivolous. At trial, Hernandez testified and set out in detail his criminal history, including the crimes he committed in connection with Nine Trey and Ellison. The Government urged the jury to credit Hernandez, including insofar as his accounts of events were heavily corroborated. As to Hernandez's central interaction with Ellison, in which Ellison

kidnapped Hernandez, Hernandez's account was corroborated by a contemporaneous video and audiotape and by the consistent and compelling testimony of Hernandez's driver, Jorge Rivera, an eyewitness to the kidnapping. The defense urged the jury not to credit Hernandez. The jury's verdict reflects its decision to credit Hernandez. And the Court earlier rejected a post-trial challenge by Ellison, in his motions under Rules 29 and 33, to his conviction on Count Two, which substantially challenged Hernandez's credibility. *See* 1/10/20 Dec'n at 16. There, Ellison contended that the jury's acquittal of him on a separate count relating to this incident—Count Three, which charged assault with a deadly weapon in aid of racketeering—bespoke a rejection of Hernandez's testimony. *See id.* (explaining why the jury's verdicts on the two counts were consistent).

As the Court reviewed in the same decision, Ellison's participation in the Nine Trey racketeering conspiracy—the subject of Count One, an overarching charge—was supported by overwhelming and varied evidence. In addition to Hernandez's testimony, two other cooperating witnesses (Rivera and Kristian Cruz) implicated Ellison in central events in furtherance of the gang's unlawful activities. Ellison's participation and membership in Nine Trey was also corroborated by numerous photographs, videos, and text messages. *Id.* at 13

Ellison's reprise of his unsuccessful trial attack on Hernandez does not gain him any traction on his motion for compassionate release. And to the extent that Ellison's motion can be read to complain that Hernandez received a much lighter sentence than he, there was ample basis for that. Hernandez, at considerable personal cost and risk, cooperated with the Government, alerting it to violent attacks committed by members of Nine Trey, helping it charge members of Nine Trey, and testifying at the trial of Ellison and Mack. Ellison did not do so. And unlike Hernandez, Ellison did nothing to accept responsibility. And, as the Court reviewed at Ellison's

sentence, his violence in support of the gang, particularly the maiming of the innocent Hobdy,
amply justified the 24-year sentence the Court imposed.

Third, Ellison argues that he demonstrated extraordinary acceptance of responsibility by
not bringing what he contends would have been a meritorious venue challenge to Counts Two
and Five. That argument fails, for two reasons.

Its premise is wrong, in that the trial evidence supported venue in this District. Although
both the armed kidnapping of Hernandez (Count Two) and the slashing of Hobdy (Count Five)
occurred in Brooklyn, both were charged as violent crimes in aid of racketeering ("VICAR"),
specifically, in aid of the Nine Trey racketeering enterprise. And there was abundant trial
evidence that important acts of the racketeering enterprise occurred in this District. As the
Government recaps, the acts in furtherance of the racketeering enterprise included evidence of an
attempted murder in Manhattan, an armed robbery in Manhattan, and drug dealing in Manhattan.
*See* Gov't Opp. at 5 (transcript citations omitted). These acts supported venue on the two
VICAR charges. *See United States v. Saavedra*, 223 F.3d 85, 88–94 (2d Cir. 2000).

And, even had there been a colorable venue challenge to those two counts, Ellison's
claim to have accepted responsibility is specious. Among the 13 defendants charged in this case,
No. 18 Cr. 834, he and Mack alone did not plead guilty and admit criminal conduct, a point the
Court noted at sentencing in addressing Ellison's attempted analogies to co-defendants who had
done so. *See* Sent'g Tr. 83. And even today, Ellison does not admit his culpability on any count,
including the Count One racketeering conspiracy as to which he does not claim to have had a
viable challenge to venue.

Ellison thus has not identified any extraordinary and compelling basis for release. And
even if he had done, the § 3553(a) factors would not favor early release. The Court incorporates

10

by reference its extensive assessment, and balancing, of these factors at Ellison's sentencing hearing. *See* Sent'g Tr. 55–88. The Court there emphasized the grave nature of Ellison's crimes, including the slashing and maiming of Hobdy's face and the kidnapping of Hernandez, and the consequent interest in just punishment, *id.* at 62–64, the need for specific deterrence of Ellison, given his offense conduct and criminal history, *id.* at 66–69, and the need to protect the public given the violent nature of Ellison's offenses, including against unarmed victims, and his criminal history, *id.* at 70.[4] The Court balanced against these factors various mitigating factors, including conditions inside the Metropolitan Correction Center and the rigors of imprisonment during the pandemic, *id.* at 79–81, plus laudable or mitigating factors specific to Ellison's background and personal history, *id.* at 71–79. The Court found that the 24-year (below-Guidelines) sentence imposed was the lowest compatible with these factors, considered together. *Id.* at 84–85.

In rejecting Ellison's first application for compassionate release, the Court, as noted, reviewed Ellison's sentencing and these factors in detail, and, as noted above, explained why they required the 24-year sentence imposed. *See* 7/7/21 Dec'n at 9–12; *id.* at 11 ("Ellison's application, in short, is wholly incompatible with the Court's judgment that no sentence below 24 years would be reasonable for him in light of the assembled § 3553(a) factors."). The Court's

---

[4] In denying Ellison's pre-sentencing request in April 2020 for release based on the pandemic, the Court had similarly emphasized the public interest in his incapacitation. The Court wrote: "The vicious conduct for which Ellison was convicted, his significant criminal history, his high-rank in Nine Trey, and his continued violence while incarcerated make clear that the danger to the community presented by [Ellison's] release outweighs, substantially, the danger to himself presented by his incarceration at the MCC. Indeed, in the Court's assessment, of the 20 or more defendants or former defendants who have applied to this Court for release on account of the pandemic, Ellison's release would pose the single greatest danger to public safety. Accordingly, even if it had the legal authority to do so, the Court would not grant Ellison's temporary release." 4/27/20 Dec'n at 6 (internal quotations and citations omitted).

assessment that such a sentence is necessary remains the same today.  Granting release to Ellison

would badly disserve various § 3553(a) factors that the Court emphasized in imposing sentence.

## CONCLUSION

For the reasons above, the Court denies Ellison's motion for compassionate release.  The

Clerk of Court is respectfully directed to terminate the motion pending at Dockets 670 and 677.

SO ORDERED.

_____
PAUL A. ENGELMAYER
United States District Judge

Dated: October 26, 2023
      New York, New York