UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x
UNITED STATES OF AMERICA,

       -against-                               No. 18 Cr. 834 (PAE)

ANTHONY ELLISON,

        Defendant.
---------------------------------------------------------x

### DEFENDANT'S MOTION TO VACATE, SET ASIDE, AND/OR CORRECT HIS CONVICTION AND SENTENCE, BROUGHT UNDER TITLE 28, UNITED STATES CODE, SECTION 2255

Defendant, ANTHONY ELLISON, appearing pro se, respectfully submits this motion to Vacate, Set Aside, and/or Correct his Conviction and Sentence, pursuant to 28 U.S.C. 2255. For the many reasons stated hereinafter, this motion should be granted in its entirety.

**I.**     *Relevant Background.*

On August 14, 2019, in the Southern District of New York, a Superseding Indictment was filed charging Defendant with RICO Conspiracy, in violation of 18 U.S.C. 1962(d) (Count One), Kidnapping in Aid of Racketeering, in violation of 18 U.S.C. 1959(a)(1) (Count Two), Assault in Aid of Racketeering, in violation of 18 U.S.C. 1959(a)(1) (Counts Three and Five), and Using a Firearm During and In Relation to a Crime of Violence, in violation of 18 U.S.C. 924(c)(1) (Count Four).

On the advice of counsel, Defendant proceeded to trial. On October 3, 2019, the jury returned general verdicts of guilty on Counts One, Two and Five of the Superseding Indictment. Defendant was found not guilty on Counts Three and Five. On November 4, 2020, the Court sentenced this Defendant to a term of 288 months imprisonment. A timely appeal was taken. On September 23, 2022, a panel of judges in the United States Court of Appeals for the Second Circuit affirmed the judgment.

On at least two occasions since the sentence was imposed, the Defendant sought compassionate release, pursuant to 18 U.S.C. 3582(c)(1)(A). Each application was denied by the Court. Defendant now moves to vacate the judgment of conviction and his sentence on the grounds that he was denied his substantial right to effective assistance of counsel, as demonstrated hereinafter.

## II.  *Relevant Facts.*

In the interest of brevity, only those facts deemed essential to an appropriate disposition of the arguments advanced hereinafter, are set forth herein.

(a) *The Alleged "Kidnapping" of Daniel Hernandez*

The trial evidence, viewed in a light most favorable to the Government established that on July 22, 2018, Daniel Hernandez ("Hernandez"), was the victim of a robbery.

More specifically, Hernandez was accosted by at least two men while inside of a car in Brooklyn. The incident was captured by video from within the car. Hernandez identified the Defendant as one of the men involved in the incident. During the incident, Hernandez is ordered out of his car, and into another. He accompanies the men, one of whom he clearly knows and has some sort of personal relationship with. The purpose for the confrontation is obvious from the video/audio recording of the incident – this was a robbery. Hernandez, initially reluctant to accompany the men in the other car, ultimately agrees to go with them.

After accompanying the car being operated by the men, Hernandez is taken to a location from where he retrieves personal belongings (jewelry) and surrenders them to the men. According to Hernandez's testimony, he is then driven to another location where he is (according to his testimony) directed by Defendant to exit the vehicle. After declining to exit the vehicle, (according to his testimony) he is then ordered out of the vehicle by Defendant, and he departs.

At no time was Hernandez removed to a place where he was held captive. No ransom was sought by the alleged kidnappers for his release. Instead, according to his testimony, this was nothing more than an effort by the assailants to rob Hernandez, an effort that was successful.

However, since the property taken was not removed by force from Hernandez's person or presence, the Government elected to prosecute the theft as a kidnapping simply because Hernandez was forced to accompany the assailants to facilitate the robbery.

(b) *Daniel Hernandez's "Wrongful Conduct"*

As demonstrated by and through the evidence at trial, Hernandez was an admitted member of "Nine Trey," which was described as a criminal organization. His involvement with "Nine Trey" significantly contributed to the events that led up to his alleged kidnapping. Thus, Hernandez's "wrongful conduct" significantly contributed to the commission of the alleged "kidnapping."

(c) *Venue in the Eastern District of New York*

Defendant was charged with "kidnapping" and "assault," both having occurred in Eastern District of New York, in violation of 18 U.S.C. 1959(a)(1). The indictment alleged that the motive was twofold: on the one hand it alleged that the offenses were for payment from "Nine Trey," and on the other hand it alleged that the offenses were motivated by a desire maintain or increase his position in "Nine Trey." The evidence at trial did not demonstrate a strong connection between the isolated substantive offenses and the alleged enterprise.

### III. *Arguments.*

**DEFENDANT WAS DENIED HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL WHERE COUNSEL FAILED TO MAKE SPECIFIED OBJECTIONS AND/OR TO APPEAL FROM SPECIFIC ERRORS THAT OCCURRED DURING ALL PHASES OF THE CRIMINAL PROCEEDINGS IN THE DISTRICT COURT**

#### A. *The Legal Standard.*

As a preliminary matter, Defendant is a pro se litigant and his submission must be held "to less stringent standards than formal pleadings drafted by lawyers." *Ferran v. Town of Nassau,* 11 F.3d 21, 22 (2d Cir. 1993). The Court must construe this Defendant's submissions "liberally and interpret them to raise the strongest arguments that they suggest." *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir. 1999).

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. *Kimmelman v. Morrison,* 477 U.S. 365, 374-75 (1986); *Apricio v. Artuz,* 269 F.3d 78, 95 (2d Cir. 2001)("Occasionally, the performance of defense counsel is so dismal that it ripens into the deprivation of counsel altogether and potentially violates the defendant's Sixth Amendment rights."). To establish a claim of ineffective assistance of counsel, the defendant must satisfy a two-prong test. First, he must show that "counsel's performance fell below an objective standard of reasonableness" under "prevailing professional norms." *Strickland v.*

*Washington,* 466 U.S. 668, 688-89 (1984). An attorney's performance is given a strong presumption of effectiveness, as courts recognize a "wide range of professional assistance." *Id.* at 689.

Second, the defendant must also "affirmatively prove prejudice" by showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 693-94. The standard of proof is less than a preponderance of the evidence. *See, Soto-Beltran v. United States,* 946 F.Supp.2d 312, 317 (S.D.N.Y. 2013). However, "some objective evidence other than defendant's assertions [is required] to establish prejudice." *Pham v. United States,* 317 F.3d 178, 182 (2d Cir. 2003).

**B. *Discussion.***

*(a) Daniel Hernandez Was Not "Kidnapped"*

Defendant was denied his Sixth Amendment right to Effective Assistance of Counsel when counsel failed to object to and/or appeal from the jury verdict finding Defendant guilty of "kidnapping" Mr. Hernandez. To obtain and sustain a conviction on both the RICO charge and the substantive kidnapping charge, the Government was required to prove that the conduct surrounding the events of July 22, 2018, constituted a kidnapping, as defined by New York law.

"Most people no doubt think they know what 'kidnapping' means, but the term is a hard one to define. Penal Law {section] 135.20 says simply: 'A person is guilty of kidnapping in the second degree when he abducts another person.' But the statutory definition of 'abduct' is more complicated: "'Abduct' means to restrain a person with intent to prevent his liberation by either (a) secreting or holding him in a place where he is not likely to be found, or (b) using or threatening to use deadly physical force.'" *People v. Leonard,* 2012 N.Y. Slip Op. 4206, at *2 (N.Y. 2012).

The conduct alleged, and arguably proven, established an effort to rob Mr. Hernandez. Mr. Hernandez agreed to accompany the assailants in the car they were driving. Throughout the entire incident, Mr. Hernandez remained inside of a car on a public street. Thus, it cannot be said Mr. Hernandez was "secret[ed]" or "held" "in a place where he [was] not likely to be found," in order to "restrain" him "with intent to prevent his liberation," within the definition of "abduct," under Penal Law Section 135.20(a). Clearly, a car operating and/or parked on a public street is not a place where a person is not likely to be found.

This brings us to the Section 135.20(a), which would have required proof that Mr. Hernandez was "restrained" by assailants "using or threatening to use deadly physical force," for the purpose of "prevent[ing] his liberation."

The trial evidence established that Mr. Hernandez agreed to accompany his assailants, in an effort to resolve a dispute that came about because Mr. Hernandez had directed and sanctioned an act of violence which had resulted in women being shot in her foot in Brooklyn approximately four days before Mr. Hernandez was accosted on July 22, 2018. The evidence did not establish that Mr. Hernandez was threatened with the use of deadly force in order to "restrain" him. Any evidence of a threat of deadly force was associated with a refusal to part with money and/or property, and was completely unrelated to any intent to restrain Mr. Hernandez, and prevent his liberation. Indeed, once the robbery was successful, the assailants permitted Mr. Hernandez to leave the car in which he had been driven. Mr. Hernandez, in fact, refused to leave and had to be ordered out of the car.

This conduct cannot, under any circumstances, be said to have constituted an "abduct[ion]" within the meaning of Section 135.20(a) or (b), and counsel's failure to move for a judgment of acquittal, pursuant to Rule 29(c) of the Federal Rules of Criminal Procedure – prior to and/or following the verdict – deprived Defendant of his Sixth Amendment right to Effective Assistance of Counsel. Further, counsel's failure to appeal on the ground that the conduct did not constitute a "kidnapping" within the definition of Section 135.20(a) or (b), for the reasons stated, also deprived Defendant of his right to Effective Assistance of Counsel on appeal.

In view of the foregoing, Defendant is "actually innocent" of the substantive kidnapping charge. The conviction on that count must, therefore, be vacated. Relatedly, the conviction on Count One (RICO) must also be vacated since there remains (potentially) but a single viable predicate act, and there must be at least two predicate acts of racketeering activity for the conviction to stand.

Had counsel sought relief arguing that the conduct did not fall within the ambit of the statute allegedly violated, pursuant to Fed. R. Crim. P. 29(c), the Court would have granted that motion and ordered the indictment dismissed. *See, e.g., United States v. Aleynikov,* 737 F.Supp.2d 173, 176-177 (S.D.N.Y. 2010)("Dismissal is required where the conduct alleged in the indictment as a factual basis for the offense is not actually prohibited by the language of the statute."). The same is true for the appellate counsel's ineffectiveness. Had the judgment of conviction been appealed on the ground that the conduct alleged in this case did not constitute an "abduction" or "kidnapping," as so defined, the Second Circuit would have reversed the judgment of conviction on both the RICO count and the substantive kidnapping count. *See, United States v. Perrotta,* 313 F.3d 33 (2d Cir. 2002).

### (b) *<u>Daniel Hernandez's "Wrongful Conduct"</u>*

Defendant submits that he was denied his right to effective assistance of counsel at sentencing when sentencing counsel failed to seek a downward departure based on Mr. Hernandez's wrongful conduct, and the fact that such conduct significantly contributed to the commission of the alleged kidnapping. As noted, Mr. Hernandez had directed and sanctioned an act of violence that, on or about July 18, 2018, resulted in a woman being shot in her foot in Brooklyn. Mr. Hernandez's conduct in this respect was both unlawful and wrongful, and prompted the dispute that resulted in the incident that occurred on July 22, 2018.

Under Section 5K2.10 of the U.S. Sentencing Guidelines, the U.S. Sentencing Commission has encouraged district courts to consider a victim's "wrongful conduct" in fashioning an appropriate sentence. It is undeniable that Daniel Hernandez's "wrongful" and illegal conduct contributed significantly to his alleged kidnapping.

Counsel failed to seek a lower sentence in this case pursuant top Section 5k2.10, and the failure to do so deprived Defendant of his right to effective assistance of counsel at a critical stage in the criminal proceedings – sentencing. For that, the sentence should be vacated, and this Defendant should be resentenced after the Court takes into account Section 5K2.10.

The Second Circuit has observed that a district court may impose a sentence beneath the applicable sentencing range "if the victim's wrongful conduct contributed significantly to provoking offense behavior." *United States v. Cavova,* 485 F.3d 674, 681 (2d Cir. 2007). Indeed, the Supreme Court has emphatically stated that a victim's wrongful conduct is an *encouraged* basis for downwardly departing from the applicable sentencing range. *Koon v. United States,* 518 U.S. 81, 101 (1996). The Government also ignores, and fails to confront, Defendant's citation to Second Circuit precedents *United States v. Canova,* 485 F.3d 674, 681 (2d Cir. 2007)("if the victim's wrongful contributed significantly to provoking offense behavior.").

At bear minimum, the Defendant was entitled to have the Court consider Mr. Hernandez's wrongful conduct when it decided what sentence would be appropriate. There can be no doubt that the Court did not have the benefit of a claim that Mr. Hernandez's wrongful and criminal conduct (which contributed significantly to the events of July 22, 2018) significantly contributed to, and provoked, the commission of the instant offense, before the Court determined what sentence would be imposed.

Counsel is to blame for such, as counsel failed to seek a downward departure and the Presentence Report failed to identify this mitigating sentence factor as a basis for a downward departure. Counsel should have objected to the presentence report's conclusion that there was no basis for a downward departure. His failure to do so deprived Defendant of his right to effective assistance of counsel, and the sentence must be vacated.

### *(c) Venue Was Improper In The Southern District.*

Defendant submits that he was denied his right to effective assistance of counsel when his attorney failed to challenge venue in the Southern District of New York as it relates to Counts Two and Five of the Indictment. The conduct underlying Counts Two and Five occurred exclusively in the Eastern District of New York, and constitute isolated incidents. Neither incident was, in any way, related to the alleged Nine Trey enterprise itself. Rather, the acts were allegedly committed by Nine Trey member(s). In fact, not other alleged acts of "kidnapping" are cited anywhere else in this case, a testament to the fact that the Nine Trey enterprise was not routinely involved in such conduct. The lack of continuity evinces the isolated nature of the alleged offense. Thus, counsel should have sought dismissal based on venue having been improperly placed in the Southern District of New York.

Criminal defendants have a constitutional right to be tried in the district in which their offense(s) were committed. *See,* Fed. R. Crim. P. 18. Here, the offenses underlying Counts Two and Five were committed in the Eastern District of New York. While the rules are somewhat different when the offense is one prosecuted under 18 U.S.C. 1959(a) (which is the case here), amongst the questions the Court must ask in determining whether an offense committed in the Eastern District of New York has been properly prosecuted in the Southern District of New York is "whether the criminal activities in question [here, the conduct underlying Counts Two and Five of the Indictment] bear 'substantial contacts' to the Southern District of New York, in order to ensure that the policies and considerations underlying the Constitution's commands respecting venue have been preserved." *United States v. Saavedra,* 223 F.3d 85, 89 (2d Cir. 2000).

Counsel failed to seek dismissal based on improper venue, and the Court never determined whether the Eastern District conduct in Counts Two and Five had a "substantial contact[]" to the Southern District. Indeed, given the isolated nature of each event, they did not. Had counsel sought dismissal based on improper venue, that motion would have been granted, as a matter of law.

## V.   Conclusion.

Having demonstrated that he was denied his Sixth Amendment Right to Effective Assistance of Counsel, in at least three distinct manners, an order granting relief and vacating the judgment of conviction and sentence should issue in the interest of justice, and to prevent a complete miscarriage of justice.

WHEREFORE, for the many reasons stated, this motion should be granted, in its entirety.

Dated: Brooklyn, New York
      November 15, 2023

Respectfully submitted,

*Anthony Ellison*

_____
ANTHONY ELLISON
REGISTER NO.
M.D.C. BROOKLYN
P.O. BOX 329002
BROOKLYN, NEW YORK 11232